## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEANA MORRISON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | )  **Case No. 12-CV-375-JED-PJC** |
| v. | ) |
| | ) |
| VOLKSWAGEN TULSA, LLC, | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The Court has for its consideration the Motion to Stay and to Compel Arbitration (Doc. 16) filed by defendant, Volkswagen Tulsa, LLC, seeking to compel arbitration of the claims asserted by plaintiff, Jeana Morrison, and to stay the action pending arbitration.

I.      **Background**

Plaintiff began employment as a sales associate with defendant in April, 2011.  (Doc. 2, ¶ 10).   Plaintiff  alleges  claims  of  race  discrimination,  hostile  work  environment,  gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and asserts violations of wage and hour laws (Doc. 2, ¶¶ 9-75)

On  April  12,  2011,  plaintiff  and  defendant  executed  an  Arbitration  Agreement  (the "Agreement"), which requires submission of "any dispute between any employee(s) and VW Tulsa LLC which arises either directly or indirectly from Employee's employment with VW Tulsa LLC."  (Doc. 16-1).  The Agreement provides for "final and binding" arbitration, with the following pertinent terms:

> [S]uch dispute shall be settled by arbitration in accordance with the rules for commercial arbitration of the American Arbitration Association (or a similar organization) in effect at the time such arbitration is initiated, and subject further to the provisions of any applicable Oklahoma arbitration law, incorporated herein by reference.  I will submit any dispute - including but not limited to my

termination - arising under or involving my employment with VW Tulsa LLC to binding arbitration within one (1) year from the date the dispute first arose. . . .

The prevailing party shall be awarded all of the filing fees and related administrative costs.  Administrative and other costs of enforcing an arbitration award, including the costs of subpoenas, depositions, transcripts and the like, witness fees, payment of reasonable attorney's fees, and similar costs related to collecting an arbitrator's award, will be added to, and become a part of, the amount due pursuant to this Agreement. . . . .

My signature on this document acknowledges that I understand the Arbitration Policy and agree to abide by its conditions. . . . I agree that the arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with VW Tulsa LLC or the termination of that employment.

(*Id.*).

There is no dispute that plaintiff's claims "aris[e] under or involv[e]" her employment within the scope of the Agreement.  However, she argues that the Agreement is unenforceable because its terms are unreasonably favorable to defendant due to the Agreement's fee and cost terms and one year limitations period.

The Agreement would award to the prevailing party all "filing fees and related administrative costs."  (Doc. 16-1).  Plaintiff cites the Commercial Arbitration Rules of the American Arbitration Association ("AAA") (referenced within the Agreement) and asserts that they would require her to pay an initial filing fee of $2800.00, a final fee of $1250.00, and one-half of the arbitrator's fees, and that she cannot afford such costs, rendering it "unlikely" that she would be able to pursue her claims.  (Doc. 19-1 at 2-3).  In response, defendant notes that those Rules of the AAA provide that the "AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."  (Doc. 20 at 4).  In addition, defendant has affirmatively "agree[d] to pay the costs of the arbitration, such as filing fees and the arbitrator's fee, and waives any right it may have had under the Agreement to recoup the same or its own attorney's fees, regardless of the outcome of the arbitration."  (Doc. 20 at 3).  As a result,

defendant argues that plaintiff cannot establish that she is likely to bear the costs of the arbitration, because any concern has been removed by defendant's agreement to bear all such costs.  (*Id.* at 5).  In briefing on the motion (*id.* at 2-3), defendant also waives any defense under the one year limitation and represents that it will not seek to enforce the one year limitations period against plaintiff.

## II.    Discussion

The Federal Arbitration Act ("FAA") provides that written arbitration agreements under the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA provides for (1) a stay of proceedings when an issue is referable to arbitration and (2) an order compelling arbitration where a party has refused to proceed under an enforceable arbitration agreement.  *See* 9 U.S.C. §§ 3-4; *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).  These provisions reflect a "liberal federal policy favoring arbitration agreements."  *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Title VII claims, as well as other statutory claims, "may be the subject of an arbitration agreement, enforceable pursuant to the FAA."  *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir. 1994) (quoting *Gilmer*, 500 U.S. at 26)).

Courts within the Tenth Circuit, including in this District, have recently compelled arbitration under circumstances similar to those presented here.  *See Vicente v. Volkswagen of Tulsa, LLC*, No. 12-CV-318-CVE, 2012 WL 6115055 (N.D. Okla. Dec. 10, 2012); *Munoz v. Green Country Imports, LLC*, No. 12-CV-322-GKF, 2012 WL 4736332 (N.D. Okla. Oct. 3, 2012); *Smith v. AHS Oklahoma Heart, LLC*, No. 11-CV-691-TCK, 2012 WL 3156877 (N.D.

Okla. Aug. 3, 2012); *James v. Bobrick Washroom Equip., Inc.*, CIV-09-145-KEW, 2010 WL 368727 (E.D. Okla. Feb. 1, 2010).

In *Vicente*, the plaintiff was employed by Volkswagen of Tulsa, LLC and signed an arbitration agreement that is identical to the Agreement which Plaintiff signed in this case.  Like plaintiff here, the plaintiff in *Vicente* asserted that the agreement's one year limitations period and cost and fee provisions are unenforceable.  2012 WL 6115055, at **2-3.  The *Vicente* court determined that the one year limitation significantly diminished the plaintiff's statutory rights under Title VII and was therefore unenforceable.  *Id.*  However, the court found that the one year limitation provision was severable from the arbitration agreement such that the unenforceable provision could be severed and the rest of the agreement to arbitrate could be enforced.  *Id.*  As in this case, the defendant in *Vicente* expressly agreed to "bear all costs associated with the arbitration, including 'filing fees of the arbitration, any costs imposed by the arbitrator, and its own attorney's fees regardless of the outcome of the litigation.'"  *Id.*  As a result, the court found that the "defendant's waiver moots plaintiff's objection because the provision no longer 'nullifies plaintiff's right . . . to bring a non-frivolous suit without risking paying his opponent's fees.'"  *Id.* (quoting *Munoz*, 2012 WL 4736332, at *4)).  The *Vicente* court then granted the motion to compel arbitration and stay the action pending arbitration.  *Id.*, at *4.

The plaintiff in *Munoz* filed a complaint against Green Country Imports, LLC and Volkswagen Tulsa, LLC.  As in *Vicente*, the defendants in *Munoz* moved to compel arbitration and stay the action pending arbitration, based upon an arbitration agreement virtually identical to the Agreement in this case.  *See* 2012 WL 4736332, at *1.  The court found the one year limitation to be "an impermissible restriction of plaintiff's Title VII rights," but determined that the defendant's waiver of that limitation rendered the issue moot.  *Id.*, at *4.  Because the

defendant in *Munoz* did *not* agree to waive any right to recover attorney fees if it were to prevail on the plaintiff's claims, the court found that a mandatory "loser pays" attorney fee provision would "nullif[y] plaintiff's right under Title VII to bring a non-frivolous suit without risking paying his opponent's fees," and was therefore unenforceable. *Id.* Finding the primary purpose of the arbitration agreement "to provide a mechanism to resolve employment related disputes," the court found that the fee provision was not an "essential part" of the contract and thus "severance of the offending provision [was] appropriate." *Id.*, at *5. The court accordingly severed the provision, enforced the agreement to arbitrate, and granted the motion to compel arbitration and to stay the action. *Id.*

Similarly, in *Smith*, 2012 WL 3156877, at **3-4, the court found a mandatory fee-shifting provision in an arbitration agreement unenforceable against a plaintiff asserting claims under Title VII and the Equal Pay Act ("EPA"), because the provision would preclude the plaintiff from effectively vindicating her Title VII and EPA rights to sue without the risk of paying her opponent's fees. However, because the offending provision was not essential to the bargain, the court severed the provision and granted the motion to compel arbitration. *Id.*, at *4.

Like the courts in *Vicente* and *Munoz*, the Court finds that the one year limitation provision and the fee and cost provisions of the Agreement do not prevent arbitration of plaintiff's claims here. The Court also finds that, if enforced, the one year limitation period would significantly diminish plaintiff's statutory rights under Title VII, *see* 42 U.S.C. § 2000e-5(e)(1), and that one year limitation is therefore unenforceable. However, the Court finds that provision is severable from the Agreement under applicable law, which provides:

> "[W]here one provision in a contract, which does not constitute its main or essential feature or purpose, is void for illegality, or otherwise, but is clearly separable from the other parts which were relied upon," the contract is not affected by the invalid provision, and can be enforced as though the invalid

provision had not been incorporated into the contract.  As a result, valid provisions of the contract will remain unchanged if the invalid provision can be easily separated from them.

*Asbury Auto Used Car Center v. Brosh*, 314 S.W.3d 275, 278 (Ark. 2009) (citations omitted).[1]

In this case, the primary and essential purpose of the Agreement is to provide a mechanism to resolve disputes between the parties "which arise[ ] either directly or indirectly from [plaintiff's] employment with VW Tulsa, LLC" (Doc. 16-1), and the Court therefore finds that the one year limitation is not the Agreement's "essential feature or purpose" and is severable.  *See Asbury*, 314 S.W.3d at 278; *see also Vicente*, at *3.  Even if the provision were enforceable, the issue would be moot, as defendant agreed it will not seek to enforce that provision. *See Munoz*, at *4.

The Court further finds that defendant's agreement "to pay the costs of the arbitration, such as filing fees and the arbitrator's fee, and waive[r of] any right it may have had under the Agreement to recoup the same or its own attorney's fees" (Doc. 20 at 3) moots plaintiff's objection to the fee and costs provision because it no longer nullifies plaintiff's right to bring suit without risk of paying opponent's fees. *See Vicente*, at *3.  That waiver and agreement eliminate plaintiff's concern (that if she were required to pay those fees and costs, it would be "unlikely"

---

[1]    The Agreement provides that Arkansas law shall apply to issues of contract interpretation. (Doc. 16-1).  Oklahoma contract law regarding severance of invalid provisions is in accord.  *See Hargrave v. Canadian Valley Elec. Co-op, Inc.*, 792 P.2d 50, 60 (Okla. 1990) ("If the invalid contractual provision is an essential part of the agreement and the parties would not have agreed absent that provision, then the entire contract is unenforceable.  However, if the . . . unenforceable provision is not considered essential, the offending provision can be excised and the remaining portions of the contract will be enforced.") (internal citations omitted).  Because Arkansas and Oklahoma law are consistent, no choice of law inquiry is necessary.

she would be able to pursue her claims), because she will *not* bear those fees and costs and therefore cannot establish a likelihood of incurring such costs.[2]

Even if defendant had not agreed to pay all the costs and its own attorney fees, any fee-shifting provision would be unenforceable against plaintiff, and it would be severable from the Agreement*,* as such a fee provision "is not [the] main or essential feature or purpose" of the Agreement. *Asbury*, 314 S.W.3d at 278; *see also Munoz*, at *5; *Smith*, at *4; *Vicente*, at *3.

**IT IS THEREFORE ORDERED** that defendant Volkswagen Tulsa, LLC's Motion to Stay and to Compel Arbitration (Doc. 16) is **granted.** The parties are directed to submit plaintiff's claims to binding arbitration.

**IT IS FURTHER ORDERED** that the case is hereby **stayed** pending arbitration, and the Clerk shall administratively close this case, pending further Order of this Court.

**IT IS SO ORDERED** this 23rd day of January, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[2]     As Plaintiff notes, in *Shankle v. B–G Maint. Mgmt., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999), the Tenth Circuit affirmed the district court's denial of a motion to compel arbitration where the agreement would require a plaintiff to pay several thousand dollars to arbitrate claims under Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. A year later, the Supreme Court held that an arbitration agreement carrying a risk that a plaintiff would be required to pay high arbitration costs is not *per se* unenforceable. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90–91 (2000). The Supreme Court found that the "'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91. In addition, invalidating an agreement based upon a possibility of high arbitration costs would "undermine the 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24 (1983)). The Court in *Green Tree* pronounced that a party seeking to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.